IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KRISTOPHER MICHAEL KADLECEK,  )
                              )
    Debtor/Appellant,         )
                              )
    v.                        )      1:12-cv-96
                              )
SCHWANK USA, INC.,            )
                              )
    Appellee.                 )

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

    This is an appeal from an order entered by the United States Bankruptcy Court for the Middle District of North Carolina ("bankruptcy court") that retroactively annulled an order of automatic stay. For the reasons set forth below, the court finds that the bankruptcy court committed no error, and its order is affirmed.

I.    BACKGROUND

    Beginning in June 2007, Kristopher Michael Kadlecek ("Kadlecek" or "the debtor") was employed as the Southeast Regional Sales Manager for Schwank USA, Inc. ("Schwank"), a Georgia-based manufacturer of commercial and industrial-grade heating equipment. (Doc. 3, Ex. 8; Doc. 4 at 22-23.) Kadlecek was eventually promoted to Director of Sales Engineering, Design Build. (Doc. 10, Ex. 1 ("Debtor Aff.") ¶ 2.)

In July 2010, Schwank terminated Kadlecek's employment after learning that he had falsified $9,000 in expense reports to supplement his income. (Doc. 4 at 27-28.) At the time of his termination, Kadlecek possessed certain company property (including a laptop computer, copier, cell phones, computer software, and computer and customer files), and failed to abide by a written demand for its return. (Id. at 29.) He accepted new employment with Superior Radiant Products, Inc., and later Advanced Radiant Systems, Inc., both of which are competitors of Schwank. (Debtor Aff. ¶¶ 3, 4.)

Schwank became concerned that Kadlecek was misappropriating trade secrets in breach of his prior employment agreement and Georgia law. (Doc. 3, Ex. 9; Doc. 4 at 30-31.) On February 8, 2011, Schwank sued Kadlecek in Georgia state court ("state court action") and sought a temporary restraining order and injunction prohibiting him from using, disclosing, or misappropriating Schwank's trade secrets. (Doc. 3, Ex. 9.) The state court action alleged violations of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 et seq., breach of contract, fraud, trover, and quantum meruit. (Id.)

Unbeknownst to Schwank, Kadlecek had filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 30, 2010. (Doc. 4 at 31.) Schwank was not aware of the bankruptcy filing because Kadlecek had not listed Schwank as

2

a creditor in his schedule of liabilities or otherwise notified the company of his bankruptcy filing, notwithstanding Schwank's prior demand for equipment from Kadlecek. (Doc. 3, Ex. 4.)

The day the state court action was filed, Schwank's counsel sent a copy of the verified complaint to an attorney who had previously represented Kadlecek in an unemployment compensation appeal in an effort to notify Kadlecek of Schwank's intent to seek a temporary restraining order.[1] (Id., Ex. 11.) Later that day, the Georgia court granted Schwank a temporary restraining order ("TRO")[2] and set a hearing to consider a preliminary injunction. (Doc. 4 at 31.)

Kadlecek was formally served on February 21, 2011, with the summons, verified complaint, and TRO from the state court action. (Doc. 3, Ex. 12.) After receiving these documents, Kadlecek did not advise Schwank that he had filed for bankruptcy. (Doc. 4 at 32.)

On March 2 and 3, 2011, the Georgia court considered Schwank's motion for a preliminary injunction. (Id. at 33-34.) This hearing lasted two days, during which documentary evidence and witness testimony was presented. (Doc. 3, Ex. 15 ¶¶ 7-8.)

---

[1] Both parties now agree that this attorney did not represent Kadlecek at the time the verified complaint was sent.

[2] The Georgia court granted the TRO without notice upon the certification of Schwank's counsel that good cause existed because of Kadlecek's allegedly unlawful activity. (Doc. 3, Ex. 9.)

3

Kadlecek appeared at this proceeding *pro se* and did not advise the court or Schwank of his bankruptcy filing.[3] (Debtor Aff. ¶ 22; Doc. 4 at 34-35.) During the course of the hearing, the Georgia court issued a bench warrant for Kadlecek's arrest for giving false testimony material to the issues involved in the case.[4] (Doc. 3, Ex. 13.) Kadlecek was arrested and incarcerated for nine days, and the Georgia court entered an injunction against him. (Debtor Aff. ¶ 31; Doc. 4 at 35.)

It was not until Kadlecek was released from incarceration and learned of the entry of the injunction on March 11, 2011, that he notified Schwank for the first time of his bankruptcy filing. (Doc. 4 at 35.) At that point, it had been 71 days since he had filed for bankruptcy and 18 days since he had learned of the state court action.

Upon learning of the bankruptcy action, Schwank ceased all activity in the Georgia court and commenced an adversary proceeding in the bankruptcy court on May 6, 2011, seeking a declaration that the debts alleged in the state court action were non-dischargeable. (Doc. 2, Ex. 2.) On June 30, 2011,

---

[3] Kadlecek, who is not a lawyer, maintains he was not familiar with the concept of the automatic stay and did not know that the stay would have prevented Schwank's state court action. (Debtor Aff. ¶¶ 18-22.)

[4] Kadlecek made materially false statements under oath as to significant issues, but then acknowledged the veracity of contrary evidence. (Doc. 3, Ex. 13.) He claims that, because he was appearing *pro se*, he was unfamiliar with the legal terms used and therefore did not know that he was answering falsely. (Debtor Aff. ¶¶ 22-25.)

4

Schwank filed a motion requesting retroactive relief from the automatic stay. (Doc. 3, Ex. 5.) Kadlecek filed an answer to the adversary proceeding on July 5, 2011, and asserted a counterclaim for violation of the automatic stay. (Doc. 3, Ex. 6.)

Schwank's motion for relief from stay was heard in the bankruptcy court on October 6, 2011. The bankruptcy court issued a Memorandum Opinion and Order on November 16, 2011, in which it granted Schwank relief from the automatic stay and annulled the stay retroactive to February 8, 2011, in order to validate the state court action and allow the parties to liquidate Schwank's claim against Kadlecek in the Georgia court. (Doc. 10.)

Kadlecek now appeals. (Doc. 2, Ex. 1.) As the parties agree, this court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) because the order annulling the stay is a final order. See Grundy Nat'l Bank v. Tandem Mining Corp., 754 F.2d 1436, 1439 (4th Cir. 1985).

**II. ANALYSIS**

    **A. Standard of Review**

When sitting as an appellate court in bankruptcy, a federal district court applies the clearly erroneous standard to the bankruptcy court's findings of fact, but conducts a *de novo* review of questions of law. Johnson v. Goldstein (In re

5

Johnson), 960 F.2d 396, 399 (4th Cir. 1992). But if the bankruptcy court applies the wrong legal standard to the facts to arrive at a conclusion, the district court will not defer to its analysis, but will instead review the issue *de novo*. See Moody v. Polk, 408 F.3d 141, 147 (4th Cir. 2005).

In this case, the bankruptcy court determined that "cause exists to annul the automatic stay." (Doc. 10 at 3.) To the extent this finding involves a determination of the proper standard to apply, the clearly erroneous standard does not apply and this court will conduct a *de novo* review. See In re Stanley, 66 F.3d 664, 667 (4th Cir. 1995).

**B. Relief from Stay**

The automatic stay imposed by section 362(a) of the Bankruptcy Code takes effect immediately upon the filing of a debtor's bankruptcy petition. 11 U.S.C. § 362(a). The stay operates to protect a debtor from his creditors, and all post-petition actions taken against a debtor are violations of the stay even if the creditor did not know about the bankruptcy filing. Id.; Grady v. A.H. Robins Co., Inc., 839 F.2d 198, 200 (4th Cir. 1988).

Although the stay is an important protection for a debtor, its application in a particular case is not beyond the discretion and authority of the court. Section 362(d)(1) provides that the bankruptcy court shall grant relief from the

6

stay for "cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define cause; instead, it is determined by the court on a case-by-case basis. Claughton v. Mixson, 33 F.3d 4, 5 (4th Cir. 1994); Ivester v. Miller, 398 B.R. 408, 425 (M.D.N.C. 2008).

In this case, the bankruptcy court found that cause existed to annul the stay because: (1) Schwank did not receive notice that Kadlecek had filed for bankruptcy; (2) Schwank's claims exclusively involve state law; (3) Kadlecek's estate would be protected because Schwank had initiated an adversary proceeding to determine the dischargeability of the debts owed Schwank; and (4) modifying the stay would promote judicial economy. (Doc. 10 at 2-3.) In arriving at these conclusions, the bankruptcy court utilized the Fourth Circuit's decision in Robbins v. Robbins (In re Robbins), 964 F.2d 342 (4th Cir. 1992), in which the court articulated three factors that could be considered in determining if cause existed to annul the automatic stay. Kadlecek argues that the bankruptcy court wrongfully limited its analysis to the In re Robbins factors, thus constituting an error of law that should be reversed by this court.

In In re Robbins, the Fourth Circuit stated that "factors that courts consider in deciding whether to lift the automatic stay include": (1) whether the case involves only state law so that the expertise of the bankruptcy court is unnecessary; (2)

7

whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in the bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court. 964 F.2d at 345. Since In re Robbins was decided, courts in the Fourth Circuit have applied these three factors in determining whether cause exists to annul a stay. See, e.g., Ivester, 398 B.R. at 425; In re Joyner, 416 B.R. 190, 192 (Bankr. M.D.N.C. 2009). Further, the Fourth Circuit itself has continued to accept the In re Robbins factors as valid. See In re Lee, 461 F. App'x 227 (4th Cir. 2012) (affirming the lower court's use of the In re Robbins factors to determine that cause existed to annul the automatic stay) (per curiam) (unpublished).

Although the In re Robbins factors continue to be used in the Fourth Circuit, Kadlecek argues that the bankruptcy court erred in applying them in this case because Schwank sought the extraordinary remedy of retroactive relief that may be granted only in unique circumstances. See, e.g., In re Gonzalez, 456 B.R. 429, 442-43 (Bankr. C.D. Cal. 2011) (noting that the "annulment of the stay is the exception rather than the rule, and should be granted only in unique and compelling circumstances"). To assess whether unique and compelling

8

circumstances exist, he contends that the bankruptcy court should have used the (non-exhaustive) test for cause articulated in In re Lett, 238 B.R. 167 (Bankr. W.D. Mo. 1999).[5] Schwank counters that no Fourth Circuit precedent requires distinguishing between prospective and retroactive relief from the stay and the level of cause necessary to obtain relief. Further, Schwank points to In re Wiencko, 99 F. App'x 466 (4th Cir. 2004), an unpublished Fourth Circuit decision that applied the In re Robbins factors when granting retroactive relief from the automatic stay.

Schwank is correct that no Fourth Circuit authority requires that extreme circumstances exist for a bankruptcy court to grant retroactive relief from the automatic stay. While one bankruptcy court has looked to "compelling circumstances" and the In re Lett factors proposed by Kadlecek, that same court has reiterated that those factors are not mandatory. See, e.g., In re Scott, 260 B.R. 375, 381-82 (Bankr. D.S.C. 2001). As such,

---

[5] The factors listed in In re Lett are: "(1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken." 238 B.R. at 195. Additionally, the court should look at whether the creditor took affirmative, post-petition action to violate the stay and whether the creditor promptly seeks a retroactive lifting of the stay. Id. at 195-96.

9

it appears, and Kadlecek in fact concedes, that there is no test that must, or must not, be used by a bankruptcy court in determining whether cause exists to grant retroactive relief from an automatic stay.

Besides In re Wiencko, the Fourth Circuit has never considered a case that involves the retroactive annulment of an automatic stay. The In re Wiencko decision has no precedential value, as it is unpublished; it is nevertheless valuable for its persuasive reasoning. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)). The court's conclusion that the application of the In re Robbins factors, while not exhaustive, can suffice for finding cause to retroactively annul the automatic stay is logical. See In re Wiencko, 99 F. App'x at 469 (stating that "[t]hree factors are considered in determining whether 'cause' exists for lifting a stay," and listing the In re Robbins factors).[6] It has also been followed by other district courts.

---

[6] Kadlecek argues that In re Wiencko should not be persuasive in this case because the court employed the In re Robbins factors to provide an alternative ground for relief. Specifically, the Fourth Circuit concluded that, even though the bankruptcy court had erred in determining that the automatic stay never arose, the bankruptcy court's ultimate determination that the state court order was valid could be affirmed because the stay could be retroactively annulled.

See, e.g., In re Bennett, 361 B.R. 463, 465 (Bankr. E.D.N.C. 2007) (citing In re Wiencko and applying the In re Robbins factors in a case involving retroactive annulment of the automatic stay). To be sure, there is no precedent binding on the bankruptcy court or on this court that requires consideration of factors beyond those listed in In re Robbins when granting retroactive relief from an automatic stay.

Further, it does not appear that the bankruptcy court erred in applying the In re Robbins factors. With regard to the first factor (which examines whether the case involves only state law (964 F.2d at 345)), the bankruptcy court found that the issues pending in the state court action involve the exclusive application of Georgia law. (Doc. 10 at 2.) This is correct – the state court action involves violations of the Georgia Trade Secrets Act, breach of contract, fraud, trover, and quantum meruit. (Doc. 3, Ex. 9.) The resolution of these claims will not require the expertise of the bankruptcy court. This factor accordingly weighs in favor of annulling the automatic stay.

The second factor of the In re Robbins test is whether modifying the stay will promote judicial economy and whether there would be greater interference if the stay were not lifted because matters would have to be litigated in the bankruptcy
_____
99 F. App'x at 468-69. Kadlecek's argument lacks merit, however, because the Fourth Circuit's application of the In re Robbins factors was not *dicta* but instead provided the reasoning for the affirmance.

11

court. 964 F.2d at 345. The bankruptcy court found that this factor weighed in favor of annulment because modifying the stay would promote judicial economy by allowing the Georgia court to liquidate Schwank's state law claims against the debtor. (Doc. 10 at 2-3.) The court agrees. Because the claims at issue involve Georgia law (including some technical claims based on theft of trade secrets), it will promote judicial economy to have the claims liquidated in a forum with special expertise in that law. Further, having the Georgia court liquidate Schwank's claims against the debtor will prevent interference in the bankruptcy action, because otherwise the bankruptcy court would be forced to resolve these issues. Indeed, the Georgia court was well on its way in doing so, having held two days of hearings and weighing facts to enter a preliminary injunction. As such, factor two weighs in favor of annulment.

The third In re Robbins factor - whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court (964 F.2d at 345) - also weighs in favor of annulment. The bankruptcy court found that the debtor's estate would be protected by the enforcement of any judgments and the resolution of the adversary proceeding in the bankruptcy court. (Doc. 10 at 3.) Again, the court agrees. There is no harm to the estate if Schwank's claims are liquidated in the Georgia court because

12

any judgment obtained cannot be collected absent the bankruptcy court's approval. Thus, this factor, too, weighs in favor of annulment, and the bankruptcy court correctly applied the In re Robbins factors to the facts of this case.

Finally, even though Kadlecek asserts it was error for the bankruptcy court to limit its analysis to the In re Robbins factors, it is apparent that the court did not do so. The bankruptcy court explicitly considered an additional factor: Kadlecek's failure to list Schwank on his schedules, which explained why Schwank did not know about the bankruptcy filing and the automatic stay at the time it filed the state court action. (Doc. 10 at 2.) This is especially problematic for Kadlecek because he was aware that Schwank had previously demanded return of certain company property upon his termination, but refused to comply. Thus, at the time of his October 2010 bankruptcy filing, the debtor was aware that his previous employer had made a claim three months earlier for property in his possession. But Kadlecek nevertheless failed to list that claim on the schedule of liabilities, which of course would have provided notice to Schwank. The bankruptcy court was aware of this, having made an express finding of fact as to it. (Doc. 10 at 1.) Therefore, Kadlecek's contention that the bankruptcy court erred by limiting its analysis to the In re Robbins factors is contrary to the record.

Kadlecek argues against annulment of the automatic stay by noting that it is a fundamental protection for debtors in bankruptcy and is intended to give debtors a breathing spell from their creditors. (Doc. 9 at 17.) Kadlecek's intended use of the stay here, however, would have it operate not as the shield it was intended to be, but as a sword. As the state court action bore out, there is evidence that while Kadlecek was seeking the protection of the bankruptcy laws, he was also competing unfairly by using his former employer's proprietary information. The Georgia court enjoined what it found to be unlawful conduct, and it is this same injunction that Kadlecek seeks to have declared void as violative of the automatic stay.

Bankruptcy courts are courts of equity. It is not difficult to see how the bankruptcy court, when faced with this scenario, determined that Kadlecek should not be permitted to exploit the bankruptcy laws in the fashion he sought. This is especially true where Kadlecek was aware of his bankruptcy filing but failed to inform Schwank on more than one occasion. Cf. Job v. Calder (In re Calder), 907 F.2d 953, 956-57 (10th Cir. 1990) (finding that to allow debtor who failed to notify creditor of bankruptcy but participated in state court litigation to raise the stay later "would be inconsistent with the underlying purpose of the automatic stay[,] which is to give a debtor 'a breathing spell from his creditors'" (internal

14

citation omitted)). The circumstances of this case are unusual and provided compelling reasons for annulling the stay retroactively.

In summary, the court finds no error in the bankruptcy court's decision to make its annulment of the automatic stay retroactive.

**III. CONCLUSION**

For the reasons stated, the court finds that the bankruptcy court did not err in concluding that cause existed under section 362(d)(1) of the Bankruptcy Code to annul the automatic stay retroactively.

IT IS THEREFORE ORDERED that the order of the bankruptcy court (Doc. 10) is AFFIRMED.

   /s/   Thomas D. Schroeder
United States District Judge

February 4, 2013